IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MARK KEEN                                                              PLAINTIFF


            v.                          CIVIL NO. 15-5279


NANCY A. BERRYHILL, [1] Commissioner
Social Security Administration                                         DEFENDANT


## MEMORANDUM OPINION

        Plaintiff, Mark Keen, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claims for a period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the

Social Security Act (Act).  In this judicial review, the Court must determine whether there is

substantial evidence in the administrative record to support the Commissioner's decision.  See

42 U.S.C. § 405(g).

I.      **Procedural Background:**

        Plaintiff protectively filed his current applications for DIB and SSI on October 17,

2012, alleging an inability to work since May 15, 2012, due to left wrist pain subsequent to

two surgeries, left elbow pain associated with a healed dislocation and cubital tunnel syndrome,

breathing difficulty secondary to chronic obstructive pulmonary disease (COPD), and right

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as
Defendant, pursuant to Rule  25(d)(1) of the Federal Rules of Civil Procedure.

hand pain.  (Doc. 10, pp. 20, 54, 64). An administrative hearing was held on January 16, 2014, at which Plaintiff appeared with counsel and testified. (Doc. 10, pp. 31- 51).

By written decision dated June 13, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Doc. 9, p. 19).  Specifically, the ALJ found Plaintiff had the following severe impairments: chronic obstructive pulmonary disease (COPD), left wrist status post fusion, left elbow pain secondary to cubital tunnel syndrome, and right hand pain. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Doc. 10, p. 19-20).  The ALJ found that Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to frequently handle and reach, including overhead reaching, using the left upper extremity; and finger frequently using the right hand.  He must avoid even moderate exposure to fumes, odors, dust, gases and poorly ventilated areas.

(Doc. 10, p. 20).  With the help of a vocational expert (VE), the ALJ determined that while Plaintiff was unable to perform his past relevant work, he could perform work as a counter clerk, an usher or lobby attendant, and an assembly worker.  (Doc. 10, p. 25).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on September 9, 2015.  (Doc. 10, pp. 5-8, 12).  Subsequently, Plaintiff filed this action.  (Doc. 1).  This case is before the undersigned pursuant to the consent of the parties.  (Doc. 7).  Both parties have filed appeal briefs, and the case is now ready for decision.  (Docs.11, 12).

2

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c (a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. §§ 404.1520, 416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920.

## III.    Discussion:

Plaintiff makes the following arguments on appeal: 1) the ALJ erred in failing to evaluate Plaintiff's subjective complaints in accordance with Polaski; 2) the ALJ erred in reaching an RFC determination that was not based on substantial evidence; and 3) the ALJ erred in failing to fully develop the record regarding the extent of Plaintiff's manipulative limitations.[2]

### A.    Full and Fair Development of the Record:

Plaintiff argues that the ALJ erred in failing to fully develop the record regarding the extent of Plaintiff's manipulative limitations; specifically, that there were no examining

---

[2] The Court has reordered Plaintiff's arguments to correspond with the five-step analysis utilized by the Commissioner.

physicians that provided recent medical opinions as to Plaintiff's manipulative restrictions. The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011).

In this case, the record consists of physical RFC assessments completed by non-examining medical consultants; a consultative physical evaluation; and Plaintiff's medical records, which included clinic notes from his orthopedist, hospital records, and imaging results. Moreover, the medical evidence showed that Plaintiff did not undergo the Functional Capacity Evaluation recommended by Dr. Henley in February 2010 (after Plaintiff reached maximum medical improvement). Furthermore, Plaintiff failed to submit additional evidence of a consultative examination either at the January 16, 2014 hearing before the ALJ or at the Appeals Council phase of the case. After reviewing the entire record, the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

**B.     Subjective Complaints and Symptom Evaluation:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. The ALJ noted Plaintiff's hearing testimony, where he testified that his pain was worsening and that he was having more difficulty breathing. Plaintiff also testified that he had difficulty walking secondary to chest pain, and that he continued to have pain in his fused wrist leaving him with little ability to grip. Furthermore, the ALJ noted Plaintiff's testimony that he had constant pain in his right hand and thumbs that prevented him from tying his shoes or writing. (Doc. 10, p. 20).

However, in a Function Report dated April 23, 2013, Plaintiff indicated that he was able to take care of his personal needs, including bathing, caring for his hair, shaving, feeding himself and using the toilet, with occasional help from his wife to tie his shoes. (Doc. 10, p. 240). Plaintiff also indicated that he was able to assist with mowing the lawn, which took

6

approximately one-half of a day; drive a car; go out alone; shop in stores with his wife; and pay bills, count change, and use a money order.  (Doc. 10, pp. 241-242).  According to Plaintiff's responses, he was only taking Ibuprofen for his conditions.  (Doc. 10, p. 246).

With regard to the objective medical evidence, the ALJ noted the following by  Dr. Noel Henley, Plaintiff's treating orthopedist:  Dr. Henley's repeated advice to Plaintiff to wean off of his pain medication; Dr. Henley's notes that indicated (on more than one occasion) Plaintiff's "exaggerated" pain response to palpitation; Dr. Henley's notes that Plaintiff provided inconsistent complaints of left wrist pain; Dr. Henley's office notes where he opined that Plaintiff had reached maximum medical improvement to his left wrist; and Dr. Henley's recommendation that a functional capacity evaluation was necessary to determine permanent restrictions (although there was no evidence that Plaintiff underwent such an evaluation).  (Doc. 10, pp. 21-22).  The ALJ also noted that Plaintiff last saw Dr. Henley in February 2010, and did not seek medical treatment again for his wrist, hand or arm until March 2013, when he visited the Northwest Medical Center Emergency Room.  At that time, an x-ray of Plaintiff's left wrist showed no fracture, and Plaintiff was prescribed pain medication and discharged.  (Doc. 10, p. 22).

With regard to Plaintiff's additional allegations of pain in his left elbow, left finger and hand, and left shoulder, the ALJ noted that Dr. Henley diagnosed Plaintiff with a possible left ulnar nerve compression with cubital tunnel syndrome in Plaintiff's left elbow, for which Plaintiff underwent conservative treatment.   However, Plaintiff declined to undergo the recommended release surgery on his elbow.  (Doc. 10, p. 22).  With respect to Plaintiff's left shoulder, the evidence revealed that in 2009, Plaintiff declined to undergo the recommended physical therapy because his condition had improved and he no longer needed the physical

7

therapy.   Medical records dated in 2009 also revealed Plaintiff's left fingers showed a well-healed middle finger metacarpal fracture.   (Doc. 10, p. 22).

With regard to Plaintiff's complaints of difficulty breathing, shortness of breath, and chest pain, the ALJ noted that Plaintiff received emergency room treatment for such symptoms in January and August 2012, when he was diagnosed with acute bronchitis and COPD.  The ALJ further noted that pulmonary testing from December of 2012 revealed normal results.  The Court also notes that despite medical providers recommending that Plaintiff stop smoking, Plaintiff's medical records showed that Plaintiff continued to smoke cigarettes during the time period in question.  See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997) (noting that a failure to follow prescribed treatment may be grounds for denying an application for benefits). Pursuant to Plaintiff's complaints of chest pain, the ALJ noted that an August 2012 EKG provided normal results, with a second EKG in February 2013, showing preserved left ventricular function with an ejection fraction of sixty percent and only mild left ventricular hypertrophy and atrial enlargement.   (Doc. 10, pp. 22-23).

Based on a review of the record as a whole, the Court finds substantial evidence supports the ALJ's credibility assessment and because the ALJ provided good reasons for discounting Plaintiff's subjective complaints, this Court defers to the ALJ's credibility determination.  See Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (this Court defers to the ALJ's credibility determination when it is supported by good reasons and substantial evidence).

### C.    The ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545, 416.945.  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of

his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

"The [social security] regulations provide that a treating physician's opinion ... will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir.2000) (citations omitted). An ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. Id. at 1013. Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting. Id. (citing 20 C.F.R. § 404.1527(c)(2), 416.927(c)(2).

In the present case, the ALJ considered the medical assessments of treating, examining, and non-examining agency medical consultants, Plaintiff's subjective complaints, and his medical records when he determined Plaintiff could perform light work with the following exceptions: frequently handle and reach, including overhead reaching, using the left upper extremity; finger frequently using the right hand; and avoidance of even moderate exposure to

fumes, odors, dust, gases and poorly ventilated areas.  The Court notes that in determining Plaintiff's RFC, the ALJ specifically discussed the medical opinions of treating, examining and non-examining medical professionals, and set forth the reasons for the weight given to the opinions.  Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted); Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000) (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).  Plaintiff argues that the ALJ did not give proper weight to the opinion of Dr. Konstantin Berestnev.  After reviewing the record, the Court finds that the ALJ adequately set forth the reasoning for giving Dr. Berestnev's opinion little weight, specifically that Dr. Berestnev's finding of Plaintiff's limitations was based solely on Plaintiff's subjective complaints.  The Court also notes the ALJ gave Plaintiff the benefit of the doubt by finding that Plaintiff could lift and carry 20 pounds occasionally, despite Plaintiff's report to Dr. Henley in June 2009, that he was able to lift 30 to 40 pounds with his left upper extremity, and despite the fact that Plaintiff improved after Dr. Henley's previous 20-pound weight restriction from March 2009.  (Doc. 10, pp. 24, 715, 722).

Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

### D.     Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record

10

as a whole. <u>Goff v. Barnhart</u>, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a counter clerk (specifically a furniture rental clerk), an usher or lobby attendant, or an assembly worker (such as a conveyor line worker).  <u>Pickney v. Chater</u>, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.**    **<u>Conclusion:</u>**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 29th day of March, 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE

11